**BURRIS & MACOMBER, P.L.L.C.**
2478 E. River Road
Tucson, Arizona 85718
(520) 775-2000 Voice
(520) 775-2001 Fax
**D. Rob Burris, Esq.**
State Bar No. 024961
Email:  rob@burrismacomber.com
**Jennifer Maldonado, Esq.**
State Bar No. 019861
Email:  jennifer@burrismacomber.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Keffer,<br><br>                    Plaintiff,<br><br>v.<br><br>Hanlon Engineering & Associates Inc.;<br>Robert J. Hanlon; Maureen T. Hanlon<br><br>                   Defendants. | Case No. 4:19-cv-00124-RCC (LAB)<br><br>**DEFENDANTS' AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIM** |

Defendant Hanlon Engineering & Associates, Inc. ("Hanlon Engineering," or "the Compay"), Robert J. Hanlon, and Maureen T. Hanlon (collectively "Defendants"), for their Amended Answer to Plaintiff's Complaint (pursuant to FRCivP 15(a)(1)(A)), admit, allege, and deny as follows:

**GENERAL ALLEGATIONS**
**(Parties and Jurisdiction)**

1.      Defendants are without sufficient information to admit or deny facts alleged regarding Plaintiff's residency, and thus deny same.   Defendants specifically and categorically deny that Plaintiff has suffered any harms as a result of Defendants' actions, in this State or in any other.

2.      Admit.

3.      Admit.

4.      Admit.

5.      Defendants are without sufficient information regarding the specific intended subject of Plaintiff's allegation number 5 to either admit or deny, and therefore deny same.

6.      Admit.

7.      Admit.

### JURY DEMAND

8.      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants demand a jury trial.

### FACTS COMMON TO ALL OF PLAINTIFF'S CLAIMS FOR RELIEF

9.      Admit that Defendant Hanlon Engineering hired Plaintiff in May, 2015 as a mechanical engineer.  Deny that the specific date of hire was May 18, 2015.  Deny that Plaintiff was hired with a "standard" hourly pay rate.  Defendants specifically allege that Hanlon Engineering hired Plaintiff as an exempt, salaried employee, as a Mechanical Engineer, and that he was informed in writing when hired that he would be expected to work at least 40 hours a week, and that he would be compensated at a rate of $26.92 per hour which equates to $56,000 on a salary basis.  29 U.S.C. 213(a)(1).  Defendants further allege that Plaintiff signed an offer letter with the above-stated terms on May 13, 2015, which is attached hereto as Exhibit 1.

10.     Deny. Defendants assert that the initial offer letter dated May 2, 2015, and which was attached to Plaintiff's Complaint, contained an error.  Defendants very quickly discovered that error, and amended same in a new offer letter dated May 12, 2015. (Exhibit 1.)  Plaintiff signed the new offer letter on May 13, 2015.  The amended offer letter changed Plaintiff's work classification from non-exempt to exempt.  At all times

since May 13, 2015, Plaintiff was an exempt employee.  Defendants further assert that there exists other documentary evidence indicating that Plaintiff knew and understood that he was an exempt employee, and sought the benefits thereof on more than one occasion. Certain internal company emails to this effect are attached hereto as Exhibit 2.  Defendants further assert that there exists no documentary evidence indicating that Plaintiff ever alleged that he was non-exempt, or otherwise alleged that he was owed overtime wages. In fact, Plaintiff did not even raise this allegation in his initial pro per lawsuit filed in Pima County Justice Court in 2018 which was later dismissed for failure to prosecute when he and his later-retained attorney both failed to appear at a scheduled court hearing.

11.    Admit that in January, 2017 Plaintiff's salary was increased. Deny that the increase occurred precisely on January 15, 2017.  Further deny any legal implications that may be related to Plaintiff's attorney's choice of the word "wage" in this allegation, in relation to Plaintiff's assertion that Plaintiff was a non-exempt employee.  Defendants specifically allege that Plaintiff was at all times following May 13, 2015, classified as an exempt salaried employee and was not entitled to overtime compensation.

12.    Admit that in approximately 48 of the approximate 162 weeks Plaintiff worked for Hanlon Engineering, his official time records indicate that he worked over 40 hours per week.  Defendants specifically allege that Plaintiff was not entitled to additional pay outside of his normal salaried rate for any hours worked in excess of 40 hours, because he was an exempt salaried employee.  Defendants further specifically allege that Plaintiff was only assigned to the Nevada Project referenced in his Complaint for approximately the final eight (8) weeks that he worked for Hanlon Engineering, and that he was paid more than his typical weekly salary during those weeks.  That project-based payment arrangement was pursuant to a written policy for that specific project, which was provided to Plaintiff in advance of his initial travel to Nevada.  This additional payment was above and beyond what Hanlon Engineering was legally required to provide for an exempt employee.

13.     Deny.  Defendants allege that Plaintiff's official time records do not support Plaintiff's allegation in paragraph 13 of his Complaint.  Defendants further specifically allege that Plaintiff was an exempt employee, and that Plaintiff referred to himself as an exempt employee in written communications with the company (Exhibit 2), and as such Plaintiff was not entitled to any overtime pay.

14.     Admit in part and deny in part.   Defendants admit that in April, 2018, Plaintiff was assigned to work at the Kinross Bald Mountain Vantage Project in Nevada ("the Nevada Project") to provide onsite construction services support for a client that had hired Hanlon Engineering to work on its mine.  Defendants deny that Plaintiff worked between 50-55 hours per week on the Nevada Project.  Defendants specifically allege that Hanlon Engineering scheduled Plaintiff to work 50 hours per week on the Nevada Project, which was to be worked in 10-hour days, Monday – Friday from 6:00am – 5:00pm with a one-hour unpaid lunch.  This work schedule was provided by Hanlon Engineering to Plaintiff in advance of his initial travel to Nevada, and was part of Hanlon Engineering's official "Travel and Living Expenses Policy" ("the written policy") for the Nevada Project, which is attached hereto as Exhibit 3.  Plaintiff was not expected to work more than fifty (50) hours per week, and in fact was not authorized to do so.  The Nevada Project's written policy (Exhibit 3) requires prior written approval for work hours.  Defendants have no documentation (including Plaintiff's own official time records) indicating that Plaintiff ever requested prior approval for hours deviating from the schedule set forth by the written policy for the Nevada Project.

15.     Admit in part and deny in part.  Defendants admit that Plaintiff was paid more than his typical exempt salaried weekly rate during the time that he worked on the Nevada Project, which was a benefit that Hanlon Engineering voluntarily provided him and which was set forth in the Nevada Project's written policy (Exhibit 3).  Pursuant to that policy, Hanlon Engineering paid Plaintiff straight time for fifty (50) hours per week.  Defendants admit that no overtime pay was provided for any work in excess of forty (40)

hours per week or in excess of fifty (50) hours per week.  Defendants specifically allege that Plaintiff was not entitled to any overtime pay of any kind because he was an exempt employee.  Defendants further specifically allege that Plaintiff was also not otherwise legally entitled to the extra ten (10) hours of pay that Hanlon Engineering provided him each week, but for Hanlon Engineering's express offer to do so.

16.     Admit in part and Deny in part. Defendants admit that Hanlon Engineering provided lodging to Plaintiff at the Company's expense while he worked on the Nevada Project.  Defendants specifically assert that the written policy for the Nevada Project (Exhibit 3) that was provided to Plaintiff before he traveled to Nevada, specifically set forth that Plaintiff's lodging would be either at Hanlon Engineering's Elko Apartment or at lodging located in Eureka, Nevada.  Hanlon Engineering gave Plaintiff the choice of the two options.  Plaintiff chose to stay in Elko, Nevada because it was more conducive to his outside-of-work recreation interests.  Defendants specifically deny that Plaintiff was required to transport work supplies from Tucson to Nevada in his personal vehicle.  Defendants allege that Plaintiff was not authorized at any time to utilize his personal vehicle for work purposes, and was specifically prohibited from doing so by Company policy.  Hanlon Engineering paid for Plaintiff's air travel from Tucson to Nevada, and provided Plaintiff with a company vehicle (and dollar for dollar fuel reimbursement) for his use in Nevada, as per the written policy for the Nevada Project (Exhibit 3).

17.     Defendants are without sufficient information to either admit or deny the allegations contained in paragraph 17 of the Complaint and therefore deny same. Defendants specifically allege that in accordance with the written policy for the Nevada Project (Exhibit 3) that was provided to Plaintiff prior to his initial travel to Nevada, travel time to and from the job site was not to be compensated.  Defendants further allege that Plaintiff's own official records list only 42.5 hours of driving between April 18, 2018 and June 7, 2018.

18.     Deny.  Plaintiff was only the second individual that Hanlon Engineering ever placed at the Nevada Project, and as such there is not sufficient relevant history to establish any "pattern and practice."   Further, the first individual was a temporary employee, hired solely for the purpose of providing consulting services at the Nevada Project, and thus his terms of employment were different than Plaintiff's.   Hanlon Engineering further asserts that it has provided on-site construction services for a variety of projects in a variety of locations over the past twenty (20) years, and has never paid any of its regular full-time employees for drive time during those projects.

19.     Admit in part and Deny in part. Defendants admit that Hanlon Engineering did not pay Plaintiff for driving time between his company-provided residence of choice in Nevada, and the jobsite while he was assigned to work at the Nevada Project. Defendants further assert that such lack of payment is in specific accordance with the written policy for the Nevada Project (Exhibit 3) of which Plaintiff was aware before his assignment and before he chose the lodging that was further away from the jobsite in order to accommodate his personal recreational choices.  Defendants also specifically assert that Plaintiff himself only recorded driving 42.5 hours of driving between April 18, 2018 and June 7, 2018 in his official time record for the company.

20.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee.   Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than the amount to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3).   As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week. In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written

approval to deviate from the standard work hours totaling fifty (50) hours per week. Defendants are not aware of any specific hours that Plaintiff may claim to have worked over and above fifty (50) hours per week. If Plaintiff did work in excess of fifty (50) hours per week at any time while working on the Nevada Project, he did so without prior authorization and thus he was in violation of Company policy.

21.     Deny. Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee. Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than the amount to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3). As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week. In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week. Defendants are not aware of any hours that Plaintiff may claim to have worked over and above fifty (50) hours per week. If Plaintiff ever did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of Company policy.

22.     Deny. Plaintiff did not work on June 8, 2018, or on any day thereafter. Defendants specifically allege that Plaintiff submitted a letter of resignation dated June 4, 2018 in which he announced that his last day of employment would be June 15, 2018. Said resignation letter is attached hereto as Exhibit 4. Hanlon Engineering then interacted with Plaintiff and scheduled an in-person meeting with him in Elko, Nevada, for Friday, June 8, 2018. Plaintiff did not appear for this meeting. Hanlon Engineering then notified him that his resignation was accepted, effective immediately, and that he was not to return

to the jobsite.  He was given instructions regarding returning all company issued items, and Hanlon Engineering offered to reimburse him for gas and meals during his drive back to Tucson in his personal vehicle that he had chosen to take with him to Elko so that he could drive recreationally without needing to utilize the company vehicle.   Hanlon Engineering's written acceptance of Plaintiff's resignation letter is attached hereto as Exhibit 5.

23.    Deny.  Despite multiple attempts to seek clarification on this assertion prior to Plaintiff's first *pro per* Complaint filed in Pima County Justice Court on this claim, and continuing through Plaintiff's and his current attorney's failure to prosecute that action which ultimately resulted in dismissal after Plaintiff and Plaintiff's counsel both failed to appear in Court for a scheduled hearing, Defendants remain without sufficient information to either admit or deny this allegation and thus deny same.  Defendants specifically allege that although Plaintiff was provided with both paid vacation benefits and paid sick benefits, and routinely used same, Defendants are unaware of any instance in which Hanlon Engineering failed to properly apply hours of paid time off, of any kind, to Plaintiff's regular pay.  Company policy does not allow employees to "cash out" unused vacation or sick benefit at the time of termination or resignation.

24.    Deny.  Defendants specifically deny that any pattern or practice was established regarding the on-site construction services that Plaintiff provided at the Nevada Project, as there had been only one previous person placed at that jobsite by Hanlon Engineering, and that person had been a temporary employee hired for the sole purpose of providing consulting services at that location.  One person is not sufficient to establish a pattern and practice.  Defendants also assert that of all of the on-site construction services Hanlon Engineering has provided for a variety of projects in a variety of locations over the past twenty (20) years, and has never paid any of its regular full time employees for mileage reimbursement for the simple reason that Hanlon Engineering does not permit employees to utilize their own private vehicles for work

purposes (for insurance and liability reasons), and Hanlon Engineering instead provides company vehicles for these assignments. Gasoline purchased by employees for company vehicles is reimbursed dollar for dollar. Hanlon Engineering further asserts that per diem rates vary depending on job location, and that the per diem rate for the Nevada Project was $51 per work day. The employee is held responsible for submitting this on a weekly expense account. (Exhibit 3.)

25. Defendants are without sufficient information to either admit or deny the allegations in paragraph 25 of the Complaint and therefore deny same. Defendants specifically allege that Plaintiff was prohibited from utilizing his personal vehicle for work purposes by Section 3.5 of the Company's employee handbook (Exhibit 6), and that due to his driving record and related insurability issues within the State of Arizona that prohibited him from driving a company vehicle from Arizona to Nevada, Hanlon Engineering purchased airline tickets for Plaintiff to travel to and from Nevada by air. Hanlon Engineering was able to insure Plaintiff on the Company Auto Insurance policy in Nevada, and Hanlon Engineering provided Plaintiff with a Company vehicle to utilize in Nevada. Hanlon Engineering reimbursed Plaintiff for all gasoline expenditures for that Company vehicle when expense reimbursement was properly and timely requested. No reimbursement for any personal vehicle mileage was authorized or owed. Defendants further assert that they were aware that Plaintiff made arrangements to have his personal vehicle with him in Nevada in order to utilize it for personal activities outside of his work day that may not have been allowed by Company policy. Defendants deny any and all responsibility for any such personal usage of Plaintiff's own personal vehicle.

26. Defendants admit that Plaintiff was not reimbursed for any mileage that he may have accrued on his personal vehicle while he was assigned to work on the Nevada Project (without admitting that Plaintiff did accrue any mileage on his personal vehicle, and also without admitting that Plaintiff was entitled to any such reimbursement for any possible accrued mileage). Defendants specifically allege that Plaintiff was prohibited

from utilizing his personal vehicle for work purposes by Section 3.5 of the Company's employee handbook (Exhibit 6), and that due to his driving record and related insurability issues within the State of Arizona that prohibited him from driving a company vehicle from Arizona to Nevada, Defendants purchased airline tickets for Plaintiff to travel to and from Nevada by air.   Defendants were able to insure Plaintiff on the Company Auto Insurance policy in Nevada, and Defendants provided Plaintiff with a Company vehicle to utilize in Nevada.  Defendants reimbursed Plaintiff for all gasoline expenditures for that Company vehicle.  No reimbursement for any personal vehicle mileage was authorized or owed.  Defendants further assert that they were aware that Plaintiff made arrangements to have his personal vehicle with him in Nevada in order to utilize it for personal activities outside of his work day that may not have been allowed by Company policy.  Defendants deny any and all responsibility for any such personal usage of Plaintiff's own personal vehicle.

27.    Deny.

28.    Deny.  Defendants specifically deny that any "guaranty" existed with regard to per diem payments.  Defendants allege that Hanlon Engineering paid Plaintiff per diem for all work days at the Nevada Project, pursuant to the written policy for the Nevada Project (Exhibit 3).  Defendants are without sufficient information regarding the "certain expense reimbursements" Plaintiff alleges were not provided, and therefore denies same. Defendant specifically denies that any mileage compensation was authorized or owed, as more fully set forth above in paragraphs 25 and 26 which are hereby incorporated in full in this response to paragraph 28.  Defendants further specifically allege that all per diem expense reimbursement requests were required to be submitted by Plaintiff to Hanlon Engineering in a certain manner and at a certain time, pursuant to the written policy for the Nevada Project (Exhibit 3) and according to more general Company policy, in order to be processed and paid.  Hanlon Engineering appropriately processed and paid the proper submissions it received.

29.     Admit.  Hanlon Engineering provided Plaintiff with many employer-paid benefits, such as life insurance, short term disability insurance, as well as benefit plans for which the employee bore partial financial responsibility, such as health, dental, and vision insurance and a 401k plan.

30.     Admit.

31.     Defendants are without sufficient information about to which "deposits" Plaintiff refers in paragraph 31 in order to either admit or deny this allegation, and therefore deny same.

32.     Deny.  Defendants specifically allege that Plaintiff submitted a letter of resignation dated June 4, 2018 in which he announced that his last day of employment would be June 15, 2018.  (Exhibit 4.)  Hanlon Engineering thereafter interacted with Plaintiff and scheduled an in-person meeting with him in Elko, Nevada, for Friday, June 8, 2018.  Plaintiff did not appear at this meeting.  Hanlon Engineering therefore notified Plaintiff that same day that his resignation was accepted, effective immediately, and that he was not to return to the jobsite.  (Exhibit 5.)

33.     Deny.  Defendants have attempted to settle all disputes with Plaintiff in accordance with Company policy, prior to Plaintiff filing his initial complaint in Pima County Consolidated Justice Court on June 29, 2018, case number CV18019171. Defendants have continued to dispute Plaintiff's allegations at all times, including while Plaintiff and his later-retained attorney failed to properly pursue his claims in Pima County Justice Court which ultimately led to a dismissal of his Complaint.  Defendants continue to dispute Plaintiff's claims in good faith.

**First Cause of Action**
**(Unpaid Overtime)**
**(Against all Defendants)**

34.     Defendants incorporate their prior responses to the paragraphs above by reference and make the same a part hereof.

35.     Admit that Plaintiff was an employee of Hanlon Engineering.

36.     Admit that Hanlon Engineering is an employer.

37.     Deny.  Defendants specifically allege that Plaintiff was an exempt employee pursuant to 29 U.S.C. §213(a)(1) and thus was not entitled to overtime wages.  Defendants further allege that Plaintiff knew and understood his exempt status and used that status to his benefit in written communications with the Company.  (Exhibit 2.)

38.     Admit that in approximately 48 of the approximate 162 weeks Plaintiff worked for Hanlon Engineering, his official time records indicate that he worked over 40 hours per week.  Defendants specifically allege that Plaintiff was not entitled to additional pay outside of his normal salaried rate for any hours worked in excess of 40 hours, because he was an exempt salaried employee.  Defendants further specifically allege that Plaintiff was only assigned to the Nevada Project referenced in his Complaint for approximately the final eight (8) weeks that he worked for Hanlon Engineering, and that he was paid more than his typical weekly salary during the weeks spent working in Nevada.  That project-based payment arrangement was pursuant to a written policy for that specific project, which was provided to Plaintiff in advance of his initial travel to Nevada.  (Exhibit 3.)  This additional payment was above and beyond what Hanlon Engineering was legally required to provide for an exempt employee.

39.     Admit.  As an exempt employee, Plaintiff was not legally entitled to overtime compensation and therefore did not receive overtime compensation.  Defendants also allege that prior to his resignation, and in his initial lawsuit prior to retaining counsel, Plaintiff never requested overtime payment.  Further, Company policy requires that overtime hours be approved in advance.  Plaintiff never asked for approval to work overtime hours, and Hanlon Engineering never approved Plaintiff to work overtime hours.

40.     Deny.  As an exempt employee, Plaintiff did not earn or accrue overtime wages.

41.     Deny.  The statute to which Plaintiff refers is simply the penalties section relating to violations of 29 U.S.C. §206 or §207.   However, §206 and §207 are inapplicable to exempt employees per 29 U.S.C. §213(a)(1).   As §206 and §207 are inapplicable to Plaintiff and thus cannot be violated, the penalties section to which Plaintiff refers similarly cannot apply.

42.     Deny.

43.     Deny.

### Second Cause of Action
#### (Violations of A.R.S. §§23-350 et seq. – Unpaid Wages)
#### (Against all Defendants)

44.     Defendants incorporate their prior responses to the paragraphs above by reference and make the same a part hereof.

45.     Admit that Plaintiff was an employee of Hanlon Engineering.

46.     Admit that Hanlon Engineering was Plaintiff's employer.

47.     Admit insofar as Plaintiff's annual salary as an exempt employee broke down mathematically to an hourly rate of $26.92, assuming a forty (40) hour work week, when he was hired in May, 2015 as an exempt salaried employee.  Further admit that in early 2018, Plaintiff's annual salary as an exempt employee was increased such that it broke down mathematically to an hourly rate of $28.50, assuming a forty (40) hour work week.  Deny insofar as Plaintiff's allegation implies that Plaintiff was entitled to any additional compensation based on number of hours worked per week above forty (40) hours.  Defendants specifically allege that Plaintiff had been aware since at least May 12, 2015, that he was classified as an exempt employee and therefore was not entitled to overtime wages.  (Exhibit 1.)  Defendants also specifically allege that Plaintiff utilized his exempt status to his own benefit on several occasions, in written communications with the company. (Exhibit 2.)   Defendants further allege that at no time during Plaintiffs approximately three years' of employment with Hanlon Engineering, was Plaintiff ever

provided overtime wages for time worked beyond forty (40) hours per week, nor did Plaintiff ever assert that he was entitled to overtime wages prior to hiring counsel after he filed his own pro per lawsuit in 2018 (which was later dismissed for failure to prosecute after both he and his attorney of record failed to appear for a scheduled court hearing).

48.     Deny.  Plaintiff did not work on June 8, 2018, or on any day thereafter. Defendants specifically allege that Plaintiff submitted a letter of resignation dated June 4, 2018 in which he announced that his last day of employment would be June 15, 2018. (Exhibit 4.)   Hanlon Engineering interacted with Plaintiff and scheduled an in-person meeting with him in Elko, Nevada, for Friday, June 8, 2018.  Plaintiff did not appear for this meeting.  Hanlon Engineering then notified him that same day that his resignation was accepted, effective immediately, and that he was not to return to the jobsite.  (Exhibit 5.)

49.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee.  Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than that to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3).  As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week.  In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week.  Defendants are not aware of any specific hours that Plaintiff may claim to have worked over and above fifty (50) hours per week.  If Plaintiff ever did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of Company policy.

50.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee.  (Exhibit 1.) Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than the amount to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3).  As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week. In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week. Defendants are not aware of any specific hours that Plaintiff may claim to have worked over and above fifty (50) hours per week.  If Plaintiff did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of Company policy.

51.     Admit in part and Deny in part. Defendants admit that Hanlon Engineering did not pay Plaintiff for driving time between his company-provided residence of choice in Nevada and the jobsite while he was assigned to work at the Nevada Project, and that such lack of payment is in specific accordance with the written policy for the Nevada Project (Exhibit 3) of which Plaintiff was aware before his assignment and before he chose lodging that was furthest away from the jobsite in order to accommodate his personal recreational choices.  Defendants also specifically assert that Plaintiff himself only recorded driving 42.5 hours of driving between April 18, 2018 and June 7, 2018 in his official time record for the company.

52.     Deny.  Despite multiple attempts to seek clarification on this assertion prior to Plaintiff's first *pro per* Complaint filed in Pima County Justice Court on this claim, and continuing through Plaintiff's and his current attorney's failure to prosecute that action

which ultimately resulted in dismissal after Plaintiff and Plaintiff's counsel both failed to appear in Court for a scheduled hearing, Defendants remain without sufficient information to either admit or deny this allegation and thus deny same. Defendants specifically allege that although Plaintiff was provided with both paid vacation benefits and paid sick benefits, and routinely used same, Defendants are unaware of any instance in which Hanlon Engineering failed to properly apply hours of paid time off to Plaintiff's regular pay. Company policy does not allow employees to "cash out" unused vacation or sick benefit at the time of termination or resignation.

53.    Defendants are without sufficient information as to the specific "numerous other occasions" to which Plaintiff refers, and therefore is unable to admit or deny this allegation, and therefore denies same. Defendants specifically deny that Plaintiff was ever entitled to any overtime wages, due to the fact that he was an exempt employee. Defendants further allege that Hanlon Engineering at all times paid Plaintiff all wages he was legitimately owed.

54.    Defendants are without sufficient knowledge as to the specific "unpaid amounts" to which Plaintiff refers, and therefore is unable to admit or deny this allegation, and therefore denies same. Defendants specifically deny that Plaintiff was ever entitled to any overtime wages, due to the fact that he was an exempt employee. Defendants further allege that Hanlon Engineering at all times paid Plaintiff all wages he was legitimately owed.

55.    Deny.

56.    Deny.

57.    Deny.

/ / /

/ / /

/ / /

/ / /

**Third Cause of Action**
**(Unpaid Minimum Wage)**
**(Against all Defendants)**

58.     Defendants incorporate their prior responses to the paragraphs above by reference and make the same a part hereof.

59.     Admit that Plaintiff was an employee of Hanlon Engineering.  Deny that Plaintiff's employment lasted through July 2018.   Defendants allege that Plaintiff submitted his letter of resignation on June 4, 2018 (Exhibit 4), and Hanlon Engineering accepted that resignation in writing on June 8, 2018 when Plaintiff failed to appear at a meeting with the company's ownership in Nevada (Exhibit 5).

60.     Admit that Hanlon Engineering is an employer.

61.     Admit that Arizona's minimum hourly wage was $8.05 per hour in 2016. Deny that it applies to "all hours worked" without regard to the exempt status of the individual employee.

62.     Admit that Arizona's minimum hourly wage was $10.00 per hour in 2017. Deny that it applies to "all hours worked" without regard to the exempt status of the individual employee.

63.     Admit that Arizona's minimum hourly wage was $10.50 per hour in 2018. Deny that it applies to "all hours worked" without regard to the exempt status of the individual employee.

64.     Deny.  Plaintiff failed to appear for work and did not work any hours on June 8, 2018.

65.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee.   Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than the amount to which he was legally entitled during the time that he worked on the Nevada Project, in

accordance with the written policy of the Company (Exhibit 3).   As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week. In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week. Defendants are not aware of any hours that Plaintiff may claim to have worked over and above fifty (50) hours per week.  If Plaintiff ever did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of Company policy.

66.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee.  (Exhibit 1.) Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than the amount to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3).   As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week. In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week. Defendants are not aware of any specific hours that Plaintiff may claim to have worked over and above fifty (50) hours per week.  If Plaintiff did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of Company policy.

67.     Admit in part and Deny in part. Defendants admit that Hanlon Engineering did not pay Plaintiff for driving time between his company-provided residence of choice

in Nevada and the jobsite while he was assigned to work at the Nevada Project, and that such lack of payment is in specific accordance with the written policy for the Nevada Project (Exhibit 3) of which Plaintiff was aware before his assignment and before he chose the lodging that was further away from the jobsite in order to accommodate his personal recreational choices.  Defendants also specifically assert that Plaintiff himself only recorded driving 42.5 hours of driving between April 18, 2018 and June 7, 2018 in his official time record for the company.

68.     Defendants are without sufficient knowledge as to the specific "numerous other occasions" to which Plaintiff refers, and therefore is unable to admit or deny this allegation, and therefore denies same.  Defendants specifically deny that Plaintiff was ever denied any wages to which he was entitled as an exempt employee.

69.     Deny.  Defendants are without sufficient knowledge as to which time periods Plaintiff claims to have been paid less than minimum wage, and therefore are unable to admit or deny this allegation, and therefore deny same.  However, Defendants also note that given Plaintiff's high rate of pay as a Mechanical Engineer, Plaintiff would have had to have worked over 114 hours in one week in order to have his "hourly wage" fall down to \$10.00 per hour.  Defendants allege that there are no weeks during Plaintiff's employment in which he recorded working 114 hours or more.

70.     Deny.

71.     Deny.

**Fourth Cause of Action**
**(Violation of 29 U.S.C. §§201 et seq. – Minimum Wage)**
**(Against all Defendants)**

72.     Defendants incorporate their prior responses to the paragraphs above by reference and make the same a part hereof.

73.     Admit that Plaintiff was an employee of Hanlon Engineering.  Deny that Plaintiff's employment lasted through July, 2018.  Defendants allege that Plaintiff

submitted his letter of resignation on June 4, 2018 (Exhibit 4), and Hanlon Engineering accepted that resignation in writing on June 8, 2018 when Plaintiff failed to appear at a meeting with the company's ownership in Nevada (Exhibit 5).

74.     Admit that Hanlon Engineering is an employer.

75.     Deny.  Plaintiff did not work on June 8, 2018, or on any day thereafter. Defendants specifically allege that Plaintiff submitted a letter of resignation dated June 4, 2018 in which he announced that his last day of employment would be June 15, 2018. (Exhibit 4.)  Hanlon Engineering then interacted with Plaintiff and scheduled an in-person meeting with him in Elko, Nevada, for Friday, June 8, 2018.  Plaintiff did not appear for this meeting.  Hanlon Engineering then notified him that same day that his resignation was accepted, effective immediately, and that he was not to return to the jobsite.  (Exhibit 5.)

76.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee.  Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than the amount to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3).  As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Hanlon Engineering scheduled him to work fifty (50) hours per week. In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week. Defendants are not aware of any specific hours that Plaintiff may claim to have worked over and above fifty (50) hours per week.  If Plaintiff ever did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of company policy.

77.     Deny.  Defendants specifically assert that Plaintiff was not legally entitled to any pay over and above his salaried rate (calculated as his salaried hourly rate times forty (40) hours per week) because he was an exempt employee. (Exhibit 1.)  Defendants also specifically assert that Hanlon Engineering paid Plaintiff more than that to which he was legally entitled during the time that he worked on the Nevada Project, in accordance with the written policy of the Company (Exhibit 3).  As such, Hanlon Engineering paid Plaintiff for fifty (50) hours of work, at his straight time hourly rate (which was his *only* hourly rate because as an exempt employee he was not legally entitled to overtime), and Defendants scheduled him to work fifty (50) hours per week.  In addition, the written policy for the Nevada Project (Exhibit 3) requires prior written approval to deviate from the standard work hours totaling fifty (50) hours per week.  Defendants are not aware of any specific hours that Plaintiff may claim to have worked over and above fifty (50) hours per week.  If Plaintiff ever did work in excess of fifty (50) hours per week on the Nevada Project, he did so without prior authorization and thus he was in violation of company policy.

78.     Admit in part and Deny in part. Defendants admit that Hanlon Engineering did not pay Plaintiff for driving time between his company-provided residence of choice in Nevada and the jobsite while he was assigned to work at the Nevada Project, and asserts that such lack of payment is in specific accordance with the written policy for the Nevada Project (Exhibit 3) of which Plaintiff was aware before his assignment and before he chose lodging that was furthest away from the jobsite in order to accommodate his personal recreational choices.  Defendants also specifically assert that Plaintiff himself only recorded driving 42.5 hours of driving between April 18, 2018 and June 7, 2018 in his official time record for the company.

79.     Defendants are without sufficient knowledge as to the specific "numerous other occasions" to which Plaintiff refers, and therefore are unable to admit or deny this

allegation, and therefore deny same.  Defendants specifically deny that Plaintiff was ever denied any wages to which he was entitled as an exempt employee.

80.   Deny.   Defendants are without sufficient knowledge as to which time periods Plaintiff claims to have been paid less than minimum wage, and therefore are unable to admit or deny this allegation, and therefore deny same.  However, Defendants also note that given Plaintiff's high rate of pay as a Mechanical Engineer, Plaintiff would have had to have worked over 157.25 hours in one week in order to have his "hourly wage" fall down to $7.25 per hour.  Defendants allege that there are no weeks during Plaintiff's employment in which he recorded working 157.25 hours or more.

81.   Deny.

82.   Deny.

### Fifth Cause of Action
#### (ERISA Violations)
#### (Against all Defendants)

83.   Defendants incorporate their prior responses to the paragraphs above by reference and make the same a part hereof.

84.   Admit.

85.   Admit.

86.   Defendants are without sufficient information about to which "deposits" Plaintiff refers in paragraph 86 in order to either admit or deny this allegation, and therefore deny same.

87.   Deny.

88.   Deny.

89.   Deny.

90.   Deny.

/ / /

/ / /

## Sixth Cause of Action
### (Breach of Contract)
### (Against Corporate Defendant)

91.     Defendant incorporates its prior responses to the paragraphs above by reference and make the same a part hereof.

92.     Deny.  Plaintiff was only the second individual that Hanlon Engineering ever placed at this particular mine in Nevada, and as such there is not sufficient relevant history to establish any "pattern and practice."   Further, the first individual was a temporary employee, hired solely for the purpose of providing consulting services at that location, and thus his terms of employment were different than Plaintiff's.   Hanlon Engineering further asserts that it has provided on-site construction services for a variety of projects in a variety of locations over the past twenty (20) years, and has never paid any of its regular full-time employees for mileage reimbursement during those projects, because employees are specifically prohibited from driving their personal vehicles for work purposes.  Instead, Hanlon Engineering has always, and did in this case, provide a company vehicle for the employee's use, and reimbursed the employee for the cost of fuel for that vehicle.  Further, Hanlon Engineering asserts that the per diem rate that it pays for employees working on out-of-town projects vary depending on location and availability of services.

93.     Deny.

94.     Defendants are without sufficient information or belief to either admit or deny the allegations contained in paragraph 94 of the Complaint and therefore deny same. Defendant further asserts that if Plaintiff did utilize his personal vehicle for work purposes, then he did so in violation of company policy.

95.     Admit.

96.     Admit, in accordance with specific company policy prohibiting the use of a personal vehicle for work purposes.

97.     Deny.

98.    Deny.

99.    Deny.

100.    Deny.

101.    Deny.

102.    Deny.

103.    Deny.

## **AFFIRMATIVE DEFENSES**

104.    Upon information and belief and in order to avoid waiver of same, Defendants affirmatively allege all defenses set forth in Federal Rules of Civil Procedure 8(c). Specifically, Defendants affirmatively assert that some or all of the claims and allegations set forth in the Complaint are, or may be, barred by reason of:

    a.  Estoppel;

    b.  Payment;

    c.  Waiver; and

    d.  Laches.

105.    Defendants reserve the right to amend this Answer at a later time to assert any matter constituting an avoidance or affirmative defense.

106.    Defendants deny each and every allegation of Plaintiff's Complaint not specifically admitted herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**WHEREFORE**, Defendants pray for judgment against Plaintiff as follows:

A.     That Plaintiff's Complaint be dismissed with prejudice and Plaintiff takes nothing thereby;

B.     That Defendants be awarded their reasonable attorney's fees and costs incurred herein (pursuant to A.R.S. §§12-349, 12-341 and 12-341.01), plus interest at the highest legal rate until paid in full; and

C.     For such other and further relief as the Court deems just.

## COUNTERCLAIMS

### *Hanlon Engineering Associates v. Joseph Keffer*

### GENERAL ALLEGATIONS

1.     Hanlon Engineering Associates ("Hanlon Engineering") employed Joseph Keffer as an exempt, salaried mechanical engineer beginning in May, 2015.

2.     Hanlon Engineering provided Paid Time Off ("PTO") benefits to its employees, including Joseph Keffer.

3.     PTO benefits were accrued at a certain rate per hour worked.

4.     In order to utilize PTO benefits, employees of Hanlon Engineering are required to submit an appropriate request in a timely manner.

5.     Said request to utilize PTO benefits must be approved in advance in order for an employee to utilize the benefit.

6.     If an employee was not approved in advance to utilize PTO benefits, an hourly employee would not be paid for any time missed from work, and an exempt employee (like Mr. Keffer) would not be paid for any full days missed from work.

7.     Exempt employees (like Mr. Keffer) were paid for a full day's work if any portion of the day was worked.

8.      During the time that Mr. Keffer was employed at Hanlon Engineering, he utilized 40 hours of PTO benefits to which he was not entitled, exceeding his accrual allotment.

9.      Calculating Mr. Keffer's hourly pay rate and employment related expenses such as, but not limited to, payroll taxes and the employer paid portion of health insurance, an overpayment of 40 hours of PTO is the equivalent of approximately $1,450.00.

10.      Hanlon Engineering requires its employees to enter their hours for payroll processing and so that Hanlon Engineering can bill its employees' time to its clients.

11.      On June 4, 2018, Mr. Keffer submitted a letter of resignation.

12.      On June 7, 2018, Mr. Keffer did not arrived at his work site until 5:00pm and then worked for only four (4) hours instead of his scheduled ten (10) hour shift, but he submitted time records indicating that he worked his full ten (10) hour shift.

13.      Mr. Keffer did not have prior authorization to work an unusual schedule or a short day on June 7, 2018.

14.      On June 8, 2018, Mr. Keffer did not work any hours, and communicated to Hanlon Engineering that he was camping, but he submitted time records indicating that he worked his full 10 hour shift.

15.      Mr. Keffer did not have prior authorization to use PTO for June 8, 2018.

16.      On June 8, 2018, Hanlon Engineering accepted Mr. Keffer's letter of resignation and instructed him that his resignation was considered to be effective immediately, and that he was not to return to any Hanlon Engineering work sites.

17.      Mr. Keffer submitted time records indicating that he worked thirteen (13) hours on June 11, 2018 for his drive from Nevada to Tucson.

18.      Mr. Keffer submitted reimbursement requests for items for which he was not entitled, including three days of per diem during which time he did not work.

19.     Mr. Keffer's falsified time entries and reimbursement requests during the month of June, 2018 resulting in Hanlon Engineering's overpayment of approximately $1,350.00 including but not limited to wages, per diem, and employment related expenses.

20.     In June, 2018, Mr. Keffer filed a Complaint against Hanlon Engineering in Pima County Consolidated Justice Court, alleging many of the same claims as are alleged in this case.

21.      After many months of failing to prosecute those claims, Judge Paula Aboud dismissed that complaint in February, 2019.

22.     Mr. Keffer thereafter filed his complaint in this Court on March 12, 2019.

### COUNT ONE
### FRAUD (June 7, 2018)

23.     Hanlon Engineering re-alleges each and every allegation contained above as though same were fully set forth herein and by reference makes same a part hereof.

24.     Mr. Keffer made a representation of fact regarding his hours worked on June 7, 2018, by entering his hours on the official Hanlon Engineering Associates timekeeping system indicating that he worked ten (10) hours.

25.     Mr. Keffer did not in fact work ten (10) hours on June 7, 2018.

26.     This was a material representation in that it formed the basis for Hanlon Engineering having paid Mr. Keffer's wages and related compensation for that date.  Had Mr. Keffer not made this representation that he worked ten (10) hours on June 7, 2018, then Hanlon Engineering would not have paid Mr. Keffer for ten (10) hours of work on June 7, 2018.

27.     Mr. Keffer knew that he did not in fact work ten (10) hours on June 7, 2018.

28.     Mr. Keffer intended that his misrepresentation would be relied upon by Hanlon Engineering in calculating his wages and related compensation for June 7, 2018.

29.     Hanlon Engineering did not know that Mr. Keffer's entry regarding his hours worked was not true.

30.     Hanlon Engineering relied upon the truth of Mr. Keffer's time entries in calculating and providing payment of wages and related compensation, as it had for several previous years during Mr. Keffer's employment.

31.     Hanlon Engineering had a right to rely upon Mr. Keffer's time entries, as a normal course of business.

32.     Hanlon Engineering was injured as a result of its reliance on Mr. Keffer's misrepresentations.

**COUNT TWO**
**FRAUD (June 8, 2018)**

33.     Hanlon Engineering re-alleges each and every allegation contained above as though same were fully set forth herein and by reference makes same a part hereof.

34.     Mr. Keffer made a representation of fact regarding his hours worked on June 8, 2018, by entering his hours on the official Hanlon Engineering Associates timekeeping system indicating that he worked ten (10) hours.

35.     Mr. Keffer did not in fact work ten (10) hours on June 8, 2018.

36.     This was a material representation in that it formed the basis for Hanlon Engineering having paid Mr. Keffer's wages and related compensation for that date.  Had Mr. Keffer not made this representation that he worked ten (10) hours on June 8, 2018, then Hanlon Engineering would not have paid Mr. Keffer for ten (10) hours of work on June 8, 2018.

37.     Mr. Keffer knew that he did not in fact work ten (10) hours on June 8, 2018.

38.     Mr. Keffer intended that his misrepresentation would be relied upon by Hanlon Engineering in calculating his wages and related compensation for June 8, 2018.

39.     Hanlon Engineering did not know that Mr. Keffer's entry regarding his hours worked was not true.

40.    Hanlon Engineering relied upon the truth of Mr. Keffer's time entries in calculating and providing payment of wages and related compensation, as it had for several previous years during Mr. Keffer's employment.

41.    Hanlon Engineering had a right to rely upon Mr. Keffer's time entries, as a normal course of business.

42.    Hanlon Engineering was injured as a result of its reliance on Mr. Keffer's misrepresentations.

**COUNT THREE**
**FRAUD (June 11, 2018)**

43.    Hanlon Engineering re-alleges each and every allegation contained above as though same were fully set forth herein and by reference makes same a part hereof.

44.    Mr. Keffer made a representation of fact regarding his hours worked on June 11, 2018, by entering his hours on the official Hanlon Engineering Associates timekeeping system indicating that he worked thirteen (13) hours.

45.    Mr. Keffer did not in fact work thirteen (13) hours on June 11, 2018.

46.    This was a material representation in that it formed the basis for Hanlon Engineering having paid Mr. Keffer's wages and related compensation for that date.  Had Mr. Keffer not made this representation that he worked thirteen (13) hours on June 11, 2018, then Hanlon Engineering would not have paid Mr. Keffer for thirteen (13) hours of work on June 11, 2018.

47.    Mr. Keffer knew that he did not in fact work thirteen (13) hours on June 11, 2018, because he was informed on June 8, 2018 that his resignation had been accepted, effective immediately.

48.    Mr. Keffer intended that his misrepresentation would be relied upon by Hanlon Engineering in calculating his wages and related compensation for June 11, 2018.

49.    Hanlon Engineering did not know that Mr. Keffer's stated hours worked was not true.

50.     Hanlon Engineering relied upon the truth of Mr. Keffer's time entries in calculating and providing payment of wages and related compensation, as it had for several previous years during Mr. Keffer's employment.

51.     Hanlon Engineering had a right to rely upon Mr. Keffer's time entries, as a normal course of business.

52.     Hanlon Engineering was injured as a result of its reliance on Mr. Keffer's misrepresentations.

**COUNT FOUR**
**UNJUST ENRICHMENT**

53.     Hanlon Engineering re-alleges each and every allegation contained above as though same were fully set forth herein and by reference makes same a part hereof.

54.     Hanlon Engineering provided monetary payment to Mr. Keffer in the form of (a) wages for time not actually worked, (b) wages for unauthorized PTO, (c) per diem compensation to which he was not entitled (for days on which he did not actually work), and (d) other employment related expenses related to the wages for work time not actually worked and the wages for unauthorized PTO, such as but not limited to payroll taxes and employer-paid health insurance premiums.

55.     Mr. Keffer has been unjustly enriched and has received the benefit of Hanlon Engineering's monetary payments, to the detriment of Hanlon Engineering.

56.     Despite demand, Mr. Keffer has failed and otherwise refused to return Hanlon Engineering's monetary payments.

57.     Hanlon Engineering is entitled to interest at the maximum legal rate until paid in full.

**WHEREFORE**, Hanlon Engineering as Counterclaimant prays for judgment against Counterdefendant Mr. Keffer as follows:

A.     For compensatory damages in an amount to be proven at trial, plus pre and post judgment interest at the highest legal rate until paid in full;

B.     For an award of punitive damages in an amount to be proven at trial;

C.     For such other and further relief as the Court deems just.

**RESPECTFULLY SUBMITTED** this 11th day of June, 2019.

BURRIS & MACOMBER, PLLC

/s/ Jennifer J. Maldonado
Jennifer J. Maldonado
Attorney for Defendants